IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ELIZABETH R. CORYELL, | ) | Civil No.: 1:13-cv-00020-JE |
| | ) | |
| Plaintiff, | ) | OPINION AND |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| CAROLYN A. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Arthur W. Stevens, III
Black Chapman Webber & Stevens
221 Stewart Avenue
Suite 209
Medford, OR 97501

Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

OPINION AND ORDER – 1

Heather Griffith
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Elizabeth Coryell brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff seeks an Order remanding the action to the Agency for further proceedings.

For the reasons set out below, the Commissioner's decision is reversed and remanded for further proceedings.

## **Procedural Background**

Plaintiff filed an application for a period of disability and disability insurance benefits on January 26, 2007, alleging she had been disabled since March 9, 1992.

After her claims had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

On August 3, 2009, a hearing was held before Administrative Law Judge (ALJ) John J. Madden, Jr. Plaintiff; Plaintiff's husband, David Coryell, and Frances Summers, a Vocational Expert (VE), testified at the hearing.

OPINION AND ORDER – 2

In a decision dated August 3, 2009, ALJ Madden found that Plaintiff was not disabled within the meaning of the Act at any time between her alleged onset date through her date last insured. Plaintiff requested review by the Appeals Council, which granted the request, vacated the ALJ's hearing decision and remanded the case for further proceedings. In its remand order, the Appeals Council directed the ALJ to:

- Further consider the claimant's maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations . . . In so doing, consider the treating source opinions pursuant to the provisions of 20 CFR 404.1527 and [SSR] 96-2p, and explain the weight given to such opinion evidence.

- Further, if necessary, obtain evidence from a medical expert to clarify . . . the nature and severity of the claimant's impairments given the remoteness of the period at issue . . . .

- Further consider the mental and physical requirements of the claimant's past relevant work. If the claimant is precluded from performing her past relevant work, then the [ALJ] will continue the sequential evaluation process.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . .

(Tr. 122)

After remand, hearings were held before ALJ Madden on August 10, 2011 and November 29, 2011. Plaintiff and medical expert Ronald M. Klein, Ph.D. testified at the hearing.

On December 5, 2011, ALJ Madden issued a decision finding that Plaintiff had not been disabled at any time from her alleged onset date through her date last insured. That decision became the final decision of the Commissioner on November 6, 2012, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

OPINION AND ORDER – 3

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the

Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## Medical Record and Testimony

Because the parties are familiar with the medical record and testimony, I will not summarize those here but will instead address relevant portions of the record in the discussion below.

## ALJ's Decision

The ALJ first found that Plaintiff met the insured status requirements of the Act through March 31, 1995.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from March 9, 1992 through March 31, 1995.

At the second step, the ALJ found that, through her date last insured, Plaintiff had the following medically determinable impairments: bipolar disorder, pain disorder and fibromyalgia. However, the ALJ concluded that Plaintiff did not have any impairment or combination of impairments that significantly limited Plaintiff's ability to perform basic work activities. He thus found that Plaintiff did not have a "severe" impairment.

Although this finding was dispositive as to the issue of disability raised by the current application, the ALJ provided alternative findings. At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity and found that Plaintiff retained the capacity to perform "*at least*" the full range of sedentary work. (emphasis in the original). Based upon the testimony of the VE, at the fourth step the ALJ found that Plaintiff could perform her past relevant work as a bank teller.

Based upon his finding at the second step and alternative findings at the fourth step, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act at any time from her alleged onset date through her date last insured.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and

OPINION AND ORDER – 6

bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff makes the following assignments of error: 1) the ALJ failed to comply with the requirements of SSR 83-20 regarding claims involving remote onset and remote date last insured; 2) the ALJ provided insufficient reasons for discrediting Plaintiff's testimony concerning the severity of her symptoms; 3) the ALJ improperly substituted his own opinion for those of Plaintiff's treating and examining physicians and made his own independent medical findings and speculative inferences; 4) the ALJ failed to provide sufficient reasons for his determination that Plaintiff did not have a "severe"  impairment and 5)  the ALJ failed to reasonably evaluate the combined effects of Plaintiff's impairments in determining that Plaintiff's impairments alone, or in combination, were not disabling.

## I. __ALJ's Step Two Evaluation__

The ALJ's determination that Plaintiff did not have any "severe" impairments ended the sequential evaluation process at Step Two. With the exception of Plaintiff's contention that the ALJ failed to comply with the requirements of SSR 83-20, her assignments of error essentially challenge multiple aspects of the ALJ's Step Two determination that Plaintiff impairments were not "severe."

The "severe impairment" analysis is a "*de minimis* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.1996). An impairment or combination of impairments is "severe" if it significantly limits a claimant's physical or mental ability to perform basic work activities. SSR 96-3p. An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to carry out such activities. Id.

## __Evaluation of Medical Evidence__

Plaintiff asserts that the ALJ erred by improperly substituting his own opinion for those of Plaintiff's treating and examining physicians, failing to provide sufficient reasons for his determination that Plaintiff did not have a "severe" impairment and failing to reasonably evaluate the combined effects of Plaintiff's impairments.

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761–62 (9th Cir. 1989). An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions, Lester v. Chater, 81 F.2d 821, 830–31 (9th Cir. 1995), and must provide "specific, legitimate reasons ... based upon

substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989) (citations omitted).

Defendant contends that the ALJ reasonably considered the treatment records and opinions of treating physicians Drs. Dixon, Delgado, and Thompson and medical expert Dr. Klein.  I disagree. A careful review of the evidence shows that the ALJ selectively referred to only those portions of the record supporting his conclusions. This was improper. <u>See, e.g.</u>, <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1205, 1207 (9th Cir.2001).  This court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotation marks omitted ).

**<u>Treating Psychiatrist Dr. Dixon</u>**

Psychiatrist Dr. Sandra Dixon treated Plaintiff between 1992 and 1995. In his decision, the ALJ pointed to notes of visits with Dr. Dixon during and after Plaintiff's hospitalization for post-partum depression in which Plaintiff is reported as "well-oriented" without evidence of delusion or hallucinations, hyperverbal but with a "reasonably well organized" train of thought, and with tendencies toward paranoia which she recognized as "an unrealistic thought."  The ALJ also pointed to the fact that Dr. Dixon noted a number of external stressors in Plaintiff's life. The ALJ concluded that this evidence "suggests that [Plaintiff's] symptoms were temporary in nature."

This is a selective reading of Dr. Dixon's treatment notes which, in over 20 visit entries between October 4, 1993 and December 29, 1995, documented Plaintiff's mood swings, depression and irritability, talkativeness, fibromyalgia, fatigue, confusion, decreased

concentration, fogginess, inability to relax and treatment with lithium, Ambien, Prozac and

therapy sessions.  Although, as the ALJ indicated, Dr. Dixon did note in April 1992 that she had

told Plaintiff she did not think she had bipolar disorder, in treatment notes dated October 1993,

Dr. Dixon opined that "there is reasonable evidence for bipolar disorder."  Although Dr. Dixon's

notes reflected that Plaintiff reported times when she was "doing better," these observations

reflect, at most, the cyclical nature of Plaintiff's impairments and the ALJ's focus on the

evidence to which he cited fails to capture "the context of the overall diagnostic picture."

Holohan, 246 F.3d at 1205; SSR 12–2p, available at 2012 WL 3104869 ("the symptoms and

signs of [fibromyalgia] may vary in severity over time and may even be absent on some days");

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 382,

392 (Text Revision 4th ed.2000) (describing episodic nature of bipolar disorder).

**Treating Physician Dr. Delgado**

      The ALJ also focused on the findings of treating physician John Delgado, M.D. which he

asserted "suggest that the claimant's mental and physical symptoms were not significantly

limited as of the date last insured."  As the ALJ noted, Dr. Delgado's treatment records, which

span from August 20, 1991 to October 9, 2003, reported that Plaintiff at various visits was "in

fairly good shape," doing "fairly well" and that her physical and psychological condition was

"fairly stable."  However, on May 10, 1993, Dr. Delgado also noted body aches and fatigue with

history of fibromyalgia, a period of depression, and discomfort in Plaintiff's neck, shoulder,

upper and lower back, and pelvis that had been intermittently worse over the prior several weeks.

In treatment notes dated June 1, 1993, Dr. Delgado diagnosed Plaintiff with "probable

fibromyalgia/myofascial pain syndrome, chronic" and a "history of severe depression with

hypomanic state."  During a visit on September 15, 1993, Plaintiff reported symptoms of anxiety,

restlessness, depression and feelings of loss of control and mood instability.  Dr. Delgado

referred Plaintiff to Dr. Dixon for additional treatment.  On May 4, 1995, Dr. Delgado remarked

that Plaintiff was "doing well with the exception of intermittent depression and low energy

status, associated with manic depressive mood disorder."  In notes of a visit later that month, Dr.

Delgado noted that Plaintiff was continuing to have complaints of "intermittent myalgias and

proximal joint discomfort, polyarthralgia, soft tissue primarily."  In September of 1995, shortly

after the expiration of Plaintiff's insured status, Dr. Delgado noted that although Plaintiff had

recently been able to travel to Mexico she reported panic episodes, anxiety, stress, and an

increase of her level of mania.  Dr. Delgado remarked that several of Plaintiff's symptoms were

"currently seemingly coming under improved control," noted that she appeared tense and

anxious and encouraged Plaintiff to follow up with Dr. Dixon if any further pattern of anxiety or

depression was noted.

Over the course of his many years of treatment of Plaintiff, Dr. Delgado's notes reflected

the ups and downs she experienced with both her physical and mental impairments.  The ALJ's

emphasis on only those remarks which reflect improvement was error.  "Occasional symptom-

free periods—and even the sporadic ability to work—are not inconsistent with disability."

Lester, 81 F.3d 821 at 833. ("That a person who suffers from ... anxiety, and depression makes

some improvement does not mean that the person's impairments no longer seriously affect her

ability to function in a workplace." Holohan, 246 F.3d at 1205.

**Treating Physician Dr. Thompson**

In his decision, the ALJ cited to the February 1996 report from Plaintiff's treating

psychiatrist, Dr. Jeffrey Thompson, that noted that Plaintiff was fully oriented, her thought

processes were organized, her speech was normal and her affect was not depressed.  The ALJ

also pointed out that Plaintiff and her husband were planning a six-week trip and asserted that "[s]uch evidence is inconsistent with a debilitating mental disorder."

Although Plaintiff's treatment with Dr. Thompson began after her insured status had expired, his observations are relevant.  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir.1988) (citing Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir.1975)).  The ALJ's reliance on selective comments in notes from a single visit, again, failed to capture "the context of the overall diagnostic picture." Holohan, 246 F.3d at 1205.

Plaintiff established care with psychiatrist Dr. Jeffrey Thompson on February 12, 1996 after being referred by Dr. Dixon, who had closed her private practice.  In his evaluation, Dr. Thompson noted that Plaintiff had a "long-standing history of intermittent depressions that went undiagnosed," that she reported that recently her mood had been fairly good but that she was "just maintaining," had a lack of energy, although her energy had improved somewhat in the last two weeks following a vacation to Florida with her husband.  Dr. Thompson indicated his diagnoses of Bipolar I Disorder and past history of alcohol and marijuana abuse.  He noted that Plaintiff and her husband were planning on going away for six weeks near the first of March.

In notes of a visit dated February 19, 1996, Dr. Thompson noted that Plaintiff's husband indicated that he and Plaintiff could put off their planned trip to Mexico.  Dr. Thompson opined that this was "a good idea" as Plaintiff was having "significant depression."  He prescribed Wellbutrin and instructed Plaintiff to return in one week.

During a number of visits with Dr. Thompson in late February and throughout March of 1996, Plaintiff reported a variety of sometimes conflicting symptoms including becoming hypomanic, feeling the best she had in years with no depression or hypomania, feeling foggy but

not depressed or manic, and having "some good and bad days."  Dr. Thompson continued

Plaintiff on Wellbutrin and prescribed Klonopin and lithium.

Although Dr. Thompson's treatment notes continue until well past Plaintiff's date last

insured, his findings and opinions were relevant, see Lingenfelter, 504 F.3d 1028 at 1034 n. 3,

and the ALJ's selective reading of the record does not provide substantial evidence supporting

his conclusion that Plaintiff's impairments were not severe.

**Medical Expert Dr. Klein**

The ALJ gave great weight to the opinions of clinical psychologist Dr. Ronald Klein who

testified as a medical expert (ME) at the remand hearing.  The ALJ asserted that Dr. Klein was

an "experienced psychologist who is also an expert on Social Security disability evaluation" and

that his opinions were "based upon review of all evidence of record and are consistent with the

record as a whole."

Dr. Klein noted that Plaintiff's bipolar disorder was episodic in nature and opined that her

pain disorder and bipolar disorder would have caused no restrictions on activities of daily living;

no impairment of social function; mild impairment in concentration, persistence and pace and no

episodes of decompensation of an extended duration and were therefore non-severe.

Dr. Klein testified that although there was no reason to think that Plaintiff did not have

symptoms of anxiety, depression, exhaustion, foggy thinking or tearfulness during the period of

time she was in treatment with Dr. Dixon, there were no indications in Dr. Dixon's notes

regarding the intensity, duration or frequency of these symptoms.  Dr. Klein testified that he did

not doubt Plaintiff's "psychological problems" but opined that they were not in "the 12 month or

more category. . . ."  Dr. Klein also conceded that it was outside his area of qualification to

discuss the physical component of fibromyalgia and its effects.  He did testify that if he were a

OPINION AND ORDER – 13

"vocational person . . . knowing [Plaintiff's] clinical situation," it would narrow the scope of work place situations he would consider appropriate for her.

While I am satisfied that Dr. Klein had and was familiar with the evidence of record, I disagree with Defendant's assertion that substantial evidence supports the great weight the ALJ gave to Dr. Klein's opinions. The selectively cited testimony of a non-examining physician who limited his interpretation of the evidence primarily to Plaintiff's mental impairments and the mental components of her fibromyalgia does not constitute substantial evidence supporting the ALJ's Step Two determination.

### Drs. Dryland and Van Valkenburg

Defendant also contends that the ALJ was not required to discuss medical opinions "from long after the relevant period." Defendant is incorrect. In evaluating a claimant's impairments, an ALJ must consider opinions from all sources, and must weigh the consistency of these opinions with the overall record. SSR 06–03p. Medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability." Smith, 849 F.2d 1222 at 1225 ( citing Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir.1975)); see also Lingenfelter, 504 F.3d 1028 at 1034 n. 3 (noting that medical reports made after the claimant's disability insurance lapsed were relevant and were properly considered); Lester, 81 F.3d at 832 (same). Because medical reports "are inevitably rendered retrospectively," they "should not be disregarded solely on that basis." Id.

Treatment notes from Plaintiff's treating rheumatologist Dr. David Dryland span from April 2, 2002 to September 9, 2006. Dr. Dryland noted Plaintiff's history of fibromyalgia dating back to 1990. In a letter dated September 23, 2007, Dr. Dryland opined that Plaintiff suffers

from "severe fibromyalgia and bipolar disorder, she is not able to work nor is expected to significantly improve."

The medical record also includes notes of Plaintiff's treatment with Dr. John Van Valkenburg in 2007; a December 2008 report from OHSU's Rheumatology Department addressed to Dr. Van Valkenburg evaluating, at his referral, Plaintiff's bursitis and fibromyalgia and a July 14, 2009 "Fibromyalgia Residual Functional Capacity Questionnaire" completed by Dr. Van Valkenburg.  In the July 2009 questionnaire, Dr. Van Valkenburg lists Plaintiff's diagnoses of fibromyalgia and bi-polar disorder, describes Plaintiff's pain as "continuous, severe deep disabling aching pain," and opines that Plaintiff's pain is severe enough to constantly interfere with attention and concentration needed to perform simple work tasks.  Dr. Van Valkenburg also opined that Plaintiff would be able to sit 15 minutes at one time, stand for 5 minutes at one time, sit and stand/walk less than two hours in an 8-hour working day and would, on average, be absent from work more than four days per month due to her impairments or treatment.

Drs. Dryland and Van Valkenburg were Plaintiff's treating physicians.  As such, the ALJ was required to provide clear and convincing reasons for rejecting their uncontroverted opinions, Lester, 81 F.2d at 830–31, and "specific, legitimate reasons ... based upon substantial evidence in the record" for rejecting their contradicted opinions. Magallanes, 881 F.2d 747 at 751 (citations omitted).

Here, the ALJ did not meet either standard.  The ALJ's decision does not mention, let alone discuss Drs. Van Valkenburg or Dryland by name or by reference to their respective reports.  Therefore, the court is unable to determine what weight, if any, the ALJ accorded the findings and opinions of Drs. Dryland and Van Valkenburg in reaching his conclusions. Such an

omission is legal error.  See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (reaffirming that the ALJ must discuss all evidence that is significant and probative).  Although the opinions of these doctors post-date Plaintiff's date last insured, they were entitled to an evaluation by the ALJ.  20 C.F.R. § 404.1527.  The opinions of Drs. Dryland and Van Valkenburg are significant and probative at least because, if credited, they support a conclusion that Plaintiff was disabled at some point prior to the ALJ's decision thus implicating, as is discussed further below, the requirements of SSR 83-20.

In sum, the evidence relied on by the ALJ is unpersuasive because at most it demonstrates a selective reading of the record and, as a whole, the medical record does not provide substantial evidence supporting the ALJ's step-two determination.  Therefore, remand is appropriate.  Here, the ALJ should have characterized Plaintiff's bipolar disorder and fibromyalgia as severe impairments at step two because the medical record contains substantial evidence that these impairments and their resulting symptoms had more than a minimal effect on Plaintiff's ability to perform basic work activities both prior to and after her date last insured.  Regardless, of whether the evidence is ultimately sufficient to prove that Plaintiff is disabled within the meaning of the Act, it is sufficient to satisfy the *de minimis* threshold of a "severe" impairment at step two of the sequential evaluation.

Because the ALJ erred at step two of his disability analysis by finding that Plaintiff's impairments were not "severe," the Commissioner's decision must be remanded for further proceedings. See, e.g., Harman, 211 F.3d at 1178 (remand for further proceedings appropriate if outstanding issue must be resolved before determination of disability can be made).  On remand, the ALJ is instructed that Plaintiff's impairments be characterized as "severe" at step two and that the ALJ recommence the analysis at step three. Remand is appropriate even though the ALJ

offered alternative findings because those findings were premised on the ALJ's determination that Plaintiff did not have a severe impairment or combination of impairments.  Therefore, I conclude that the failure by the ALJ to evaluate properly all of Plaintiff's severe impairments at Step Two of the sequential disability evaluation also resulted in improper determinations at the remaining steps of the evaluation process.

## II. Compliance with SSR 83-20

Plaintiff contends that the ALJ failed to comply with SSR 83-20 and the Appeals Council's Remand Order because he neither drew reasonable inferences nor asked the ME at the remand hearing to draw reasonable inferences from all of the evidence of record in determining Plaintiff's onset date.  Plaintiff also contends that the ALJ failed to consult an ME with the proper credentials to draw reasonable inferences regarding Plaintiff's fibromyalgia symptoms.

Social Security Ruling 83-20 states, in relevant part:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.
> ***
> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations.  Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence.
> ***
> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.
> ***
> The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected

OPINION AND ORDER – 17

Defendant is correct that SSR 83-20 sets forth guidelines for determining the onset of *disability*.  SSR 83-20; see also <u>Sam v. Astrue</u>, 550 F.3d 808, 810 (9th Cir. 2008).  However, Defendant also contends that because the ALJ determined that Plaintiff was not disabled he was not required to consult with a medical expert to determine a disability onset date. On this point, Defendant is incorrect.  To trigger the procedures required in SSR 83–20, either the ALJ must make an explicit finding of disability <u>or</u> the record must contain substantial evidence showing that the claimant was disabled at some point after the date last insured, thus raising a question of onset date.  <u>Sam v. Astrue</u>, 550 F.3d 808, 810-811 (9th Cir. 2008).

Here, the ALJ found that Plaintiff was not disabled through the date last insured. However, because the ALJ committed error in reaching his step two findings, as discussed above, that determination is not supported by substantial evidence.  The record supports the conclusion that Plaintiff's fibromyalgia and bipolar disorder were severe impairments.  In addition, Dr. Dryland's 2007 opinion and Dr. Van Valkenburg's 2009 opinion, if credited, establish that Plaintiff's fibromyalgia was disabling at some point after the expiration of her insured status.  However, because the ALJ did not reasonably evaluate all the medical evidence of record and the sequential evaluation process was incomplete beyond step two, it is unclear whether or when Plaintiff's impairments, either alone or cumulatively, became disabling. Therefore, remand for further proceedings is appropriate.  If the expanded record warrants a determination of an onset date of disability, such determination must be made in compliance with the requirements of SSR 83-20.

### III.  <u>Plaintiff's Remaining Contentions</u>

Since evaluation of the record on remand may raise the question of onset date and trigger the ALJ's duties under SSR 83–20, I briefly address Plaintiff's arguments regarding the

qualifications of the testifying medical expert.  The court notes that properly qualified medical experts of different specialties can, and often do, offer opinions about medical conditions not within their specialties and Plaintiff has cited to no authority supporting her contention the ALJ was required to call upon the assistance of a medical expert with "the proper credentials." However, it would be contrary to the purposes of SSR 83-20 and to the obligations of an ALJ to develop a full record to consult a medical advisor who could not assist in analyzing all of the relevant medical evidence.  See SSR 83-20; Smolen, 80 F.3d at 1288; see also Yurkovic v. Apfel, 168 F. 3d 504, 1999 WL 89055 at *1 (9th Cir. 1999)(unpublished).

Because this case is being remanded for the reasons detailed above, I decline to perform an exhaustive analysis of the ALJ's credibility determination.  Credibility determinations are inextricably linked to conclusions regarding medical evidence.  20 C.F.R. §404.1529. Accordingly, the ALJ's findings as to Plaintiff's credibility are also reversed and the issue remanded.  A re-evaluation of the medical evidence of record will provide the ALJ with the necessary context to properly assess Plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

## Conclusion

For the reasons discussed above, the Commissioner's decision is reversed and this case is remanded for further proceedings.  On remand, the ALJ is instructed that Plaintiff's fibromyalgia and bipolar impairments be characterized as "severe" at step two and that the ALJ recommence the analysis at step three.  In performing that analysis, the ALJ shall discuss and either credit or provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Drs. Dryland and Van Valkenburg; shall reconsider his findings regarding the disabling level of severity of Plaintiff's impairments in light of the entire medical

OPINION AND ORDER – 19

record; assist Plaintiff with creating a complete record by 1)obtaining the aid of a medical expert

who can assist in analyzing all medical evidence of Plaintiff's impairments, 2) evaluating  lay

evidence and 3)considering any retrospective diagnoses offered by Plaintiff's treating physicians;

and, after re-evaluating the medical evidence of record, the ALJ should properly assess Plaintiff's

testimony, and either credit or provide clear and convincing reasons for rejecting it.  If

substantial evidence supports a finding that Plaintiff was disabled at any time up to the date of

the ALJ's decision, then the question of onset must be resolved in compliance with the

requirements of SSR 83-20.


DATED this 30th day of June, 2014.


_/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge